UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS F.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 19-5550-BAT

**ORDER AFFIRMING THE COMMISSIONER**

Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ erred in (1) finding his leg impairments does not medically equal Listing 1.02, and (2) assessing his residual functional capacity ("RFC"). Dkt. 14 at 2.[1] For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 47 years old, has a high school diploma, and has worked as a truck driver, garbage truck driver, bus driver, and shuttle driver. Tr. 58, 62. In January 2016, he applied for benefits, alleging disability as of March 27, 2008. Tr. 256-57. His application was

---

[1] Plaintiff also argues the ALJ erred at step-five. The Court does not address this argument because it is contingent upon the errors listed here. Dkt. 14 at 13-17. Plaintiff further argues the ALJ erred at step-two but does not devote a separate section to this argument and instead addresses it in the RFC section. Dkt. 14 at 2, 16-17. Thus, the Court does not address the step-two issue separately.

ORDER AFFIRMING THE COMMISSIONER - 1

denied initially and on reconsideration. Tr. 124-26, 128-32. The ALJ conducted a hearing in December 2017 (Tr. 43-108), and subsequently found Plaintiff not disabled. Tr. 27-37. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [2] the ALJ found:

**Step one:** Plaintiff did not engage in substantial gainful activity between his alleged onset date of March 27, 2008, and his date last insured ("DLI") of December 31, 2013.

**Step two:** Through the DLI, Plaintiff's status post left knee fracture and status post left leg fracture were severe impairments.

**Step three:** Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[3]

**RFC:** Through the DLI, Plaintiff could perform light work with additional limitations: he could lift/carry up to 20 pounds occasionally and 10 pounds frequently. He could sit for at least six hours in an eight-hour workday, and stand for two hours in an eight-hour workday. He could not climb ladders, ropes, or scaffolds. He could occasionally climb ramps or stairs. He could occasionally balance, stoop, kneel, crouch, and crawl. He could occasionally operate foot controls with the left foot. He could have occasional exposure to vibration and extreme cold temperatures. He could frequently, but not continuously, handle and finger with the dominant right hand.

**Step four:** Through the DLI, Plaintiff could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff could perform through the DLI, he is not disabled.

Tr. 27-37.

//

//

//

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER - 2

**DISCUSSION**

**A.     The ALJ's Step Three Findings**

The ALJ considered Listing 1.02 at step three but found Plaintiff does not meet the Listing's requirements. Tr. 30. Plaintiff concedes he does not meet Listing 1.02A due to lack of the requisite imaging, but argues he medically equals this listing because his joint dysfunction involves two weight-bearing joints of his left leg and he cannot ambulate effectively.

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The Listings define impairments that prevent a claimant, regardless of age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted). Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a Listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); § 416.926(a). *See also Sullivan*, 493 U.S. at 531(to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing).

Listing 1.02A addresses major dysfunction of a joint,

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with

> signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)[, with] [i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. The Court rejects Plaintiff's argument the ALJ erred in failing to find he medically equaled this listing.

First, Plaintiff failed to raise any argument regarding medical equivalency to the ALJ, and thus the ALJ did not err in failing to explicitly discuss medical equivalency in the decision. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Second, Plaintiff has not pointed to any medical findings that equal the imaging requirement of Listing 1.02A. A finding of medical equivalence must be based on medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Plaintiff suggests because his diagnoses of ankylosis and/or Achilles contracture in his left ankle cause a limited range of motion and affect his ability to ambulate, he has "met the general parameters and intent of listing 1.02." Dkt. 14 at 5. This argument is insufficient, because the "general intent" of Listing 1.02A is not at issue: listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532). Plaintiff also contends Listing 1.02A's imaging requirement should not apply to his situation because hardware in his leg would have obscured imaging efforts anyway (Dkt. 14 at 12-13), but he presents no authority for an exception on these grounds and, again, does not point to any medical evidence demonstrating medical equivalence in lieu of imaging. To the extent he

suggests the Court order the ALJ to request imaging on remand (Dkt. 14 at 12), further development of the record at this time would not pertain to the adjudicated period, because Plaintiff's DLI was six years ago. Thus, the Court finds Plaintiff has not pointed to evidence sufficient to establish medical equivalence with regard to the imaging element of Listing 1.02A.

Lastly, Plaintiff fails to show he could not ambulate effectively, which is another requirement of Listing 1.02A. The regulations define effective ambulation:

> *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). Although Plaintiff required the use of assistive devices such as a walker and cane while he recovered from surgery in 2008, since December 2008 he has relied on the use of a knee brace (Tr. 540), which is not a type of assistive device listed in the regulations, even if it is, as Plaintiff describes it, "cumbersome." Dkt. 14 at 9. With the use of that knee brace, physical therapists opined Plaintiff was able to walk and climb stairs for distances in excess of those contemplated in the regulatory definition of the ineffective ambulation. *See* Tr. 813, 855, 870; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). Although Plaintiff notes he demonstrated various limitations with walking and standing during his physical capacities evaluations (Dkt. 14 at 9-11), these limitations are not as severe as the regulatory definition of ineffective ambulation.

For all of these reasons, the Court finds Plaintiff has failed to show he medically equals Listing 1.02A, and thus has not met his burden to show error in the ALJ's step-three findings.

**B.     Residual Functional Capacity**

Plaintiff raises several arguments assigning error to the ALJ's RFC assessment. First, Plaintiff argues the ALJ erred in characterizing his RFC as for a restricted level of light work, when it should have been characterized as sedentary. Dkt. 14 at 13-14. Plaintiff fails to show harmful error in the ALJ's characterization of Plaintiff's RFC as a limited range of light work, because the ALJ identified only sedentary jobs at step five (Tr. 36), and thus it appears no harm resulted from the ALJ's assertion Plaintiff could perform light work.

Next, Plaintiff argues the ALJ erred by excluding various limitations in his ability to complete a full-time work schedule in the RFC assessment. Dkt. 14 at 14-15. He cites no medical evidence establishing the existence of these limitations, relying only on his own self-report. Dkt. 14 at 14-15. But the ALJ explained why he found Plaintiff's self-report to be not entirely reliable, and Plaintiff has provided no challenge to the ALJ's reasoning in that regard. *See* Tr. 31-34. To the extent Plaintiff points to his experience of pain during physical capacity evaluations as evidence he required additional limitations, as noted by the Commissioner (Dkt. 15 at 11), those evaluations required Plaintiff to engage in activities more strenuous than contemplated by the ALJ's RFC assessment, and thus do not contradict the ALJ's findings. Accordingly, the Court finds Plaintiff has not shown the ALJ harmfully erred in failing to include additional limitations pertaining to breaks or absenteeism in the RFC assessment.

Lastly, Plaintiff argues the ALJ erred in assessing the handling and fingering limitations of his right hand. The ALJ found Plaintiff to be capable of frequently handling and fingering on the right, but Plaintiff asserts he should have been limited to occasional handling and fingering on the right. Dkt. 14 at 15-17. However, Plaintiff cites no medical evidence or opinion supporting that limitation, and the record contains medical opinions consistent with the ALJ's

handling/fingering findings. *See, e.g.*, Tr. 813, 873. Accordingly the Court finds substantial evidence supports the ALJ's RFC handling/fingering limitations.

To the extent Plaintiff relies on his own self-report of handling/fingering limitations, this effort is unavailing because he does not show the ALJ erred in finding the self-report to be unreliable in light of Plaintiff's ability to work in the past with his wrist condition and the lack of evidence showing that the condition worsened since that time. *See* Tr. 29-30. Plaintiff suggests his prior work did not require more than occasional handling and fingering on the right (Dkt. 14 at 16), but the Dictionary of Occupational Titles ("DOT") contradicts this assertion: two of his three prior jobs require frequent handling and one requires constant handling, and two out of the three jobs require frequent fingering. *See* Tr. 35 (identification of Plaintiff's prior jobs); DOT 905.663-010, *available at* 1991 WL 687707 (Jan. 1, 2016); DOT 905.663-014, *available at* 1991 WL 687708 (Jan. 1, 2016); DOT 913.463-010, *available at* 1991 WL 687823 (Jan. 1, 2016). The ALJ reasonably found Plaintiff's ability to perform those jobs to indicate his handling/fingering limitations were less severe than he alleged.

Furthermore, the ALJ noted during the adjudicated period, Plaintiff reported an ability to exercise three times per week, where he would perform at least 200 pushups and 50 latissimus pull downs. Tr. 32 (citing Tr. 967). This also constitutes substantial evidence supporting the ALJ's assessment of Plaintiff's allegations of wrist limitations.

Because the ALJ provided clear and convincing reasons to discount Plaintiff's allegations of handling/fingering limitations in excess of those listed in the RFC assessment, and the ALJ's handling/fingering limitations are supported by substantial evidence, Plaintiff has not established that the ALJ erred in finding Plaintiff can perform frequent handling/fingering on the right.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 26th day of December, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge